**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NORTHEASTERN DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| v. | ) | No. 2:00-cr-00015 |
| | ) | |
| **BRIAN LARRY ELLEDGE** | ) | Judge Trauger |

**MEMORANDUM and ORDER**

Before the Court is defendant Brian Larry Elledge's *pro se* Motion for Clarification of Sentence (ECF No. 46), which has been supplemented by a Motion for *Nunc Pro Tunc* Designation (ECF No. 49), filed on Elledge's behalf by his defense attorney. The United States filed a response to the *pro se* motion but has not elected to file a response to the motion filed by counsel. Mr. Elledge filed a *pro se* reply to the government's response to his original motion. For the reasons set forth herein, the motion for clarification will be granted in part, and the motion for *nunc pro tunc* designation will be denied without prejudice.

**I.    PROCEDURAL BACKGROUND**

On September 15, 2000, a criminal complaint and arrest warrant were issued in this court for Mr. Elledge, charging him with being a convicted felon in possession of a firearm. (ECF No. 1, Complaint; ECF No. 7, Arrest warrant.) It is unclear whether Elledge was already in state custody on that date, but he was by the time the court issued an order to produce him from state custody in Warren County, Tennessee on December 5, 2000. Elledge was arrested on January 3, 2001, and brought before a Magistrate Judge Knowles for his initial appearance. (ECF No. 6, Order to produce; ECF No. 8, Clerk's resume of initial appearance.)

Pursuant to the terms of a negotiated plea agreement, Elledge entered a plea of guilty and was sentenced in this court, at a sentencing hearing conducted on July 2, 2001 before now-retired District Judge Robert Echols, to a prison term of 188 months, and 4 years of supervised release. (ECF No. 31, Judgment and Commitment Order.) The Judgment does not specify when the sentence was to start, nor does it mention the court's intent regarding whether the sentence was to be concurrent with or consecutive to any yet-to-be-imposed sentence on the still-pending state charges. (*Id.*) After his

sentencing in this court, Elledge was returned to state custody in Warren County, Tennessee, by the United States Marshal. (ECF No. 35, Motion for bench warrant; ECF No. 35-1, Affidavit of DUSM Kevin Koback, ¶ 4.)

On December 11, 2001, Elledge was sentenced in Case No. F-8180 in Warren County, Tennessee, to 4 years at 35% on count one, for evading arrest, to 6 years at 35% on count two, for aggravated assault, and to 6 months at 75% on count three, for driving on a suspended license, and to 11 months and 29 days at 75% on count 4, for simple possession of drugs. (ECF No. 49-1, Certified copies of judgments, Exhibit A to Motion for *Nunc Pro Tunc* Designation.) The judgment on count 1 of F-8180 reflects that the sentences on the four counts are to run concurrently with each other and also reflects the state judge's intent that the state sentences run concurrently with the "Federal Charges." (*Id.*; *see also* ECF No. 48-3, at 2, 4, exhibits to Government's Response to Clarification of Sentence.)

According to Tennessee Department of Correction (TDOC) records, Elledge was in Warren County until January 18, 2002, when he was transferred to the jail in Overton County, Tennessee, where he remained until he was transferred to TDOC custody on June 10, 2003. (ECF No. 49-2, Overton County booking sheet, Exhibit B to Motion for *Nunc Pro Tunc* Designation.) He remained in TDOC custody until his release on November 10, 2005, when he was transferred to the custody of the Coffee County, Tennessee, Sheriff's Department. TDOC has no record in its file of Mr. Elledge ever having a federal detainer placed against him. (ECF No. 49-3, affidavit of TDOC Sentence Information Services Manager Jeannetta Kimbro, Exhibit C to Motion for *Nunc Pro Tunc* Designation.)

At the conclusion of his state sentences, Elledge was released from state custody. (ECF No. 35-1, Affidavit of DUSM Kevin Koback, ¶ 5.) Because no detainer was in place, Elledge was not turned over to federal authorities for service of his 188-month federal sentence. On March 18, 2013, more than seven years after his release from state custody, the United States filed a motion in this court for the issuance of a bench warrant (ECF No. 35), which was granted on March 28, 2013 (ECF No. 37). Elledge was arrested on May 9, 2013. (ECF No. 40.)

In its response to Elledge's *pro se* motion for relief, the United States argues that the Attorney General, not the court, decides jail credit issues as an initial matter, and that Elledge is required to exhaust his administrative remedies with the Bureau of Prisons ("BOP") before seeking judicial review of

the BOP's decision through a motion under 28 U.S.C. § 2241. In his motion for *nunc pro tunc* designation, Elledge contends that the government's response does not address Elledge's request that the court may indicate the date on which he is ordered to begin serving his federal sentence. He argues that this function lies within the court's authority and is relevant to the BOP's ability to make its determination as to what jail credit should be awarded.

**II.     DISCUSSION**

Contrary to the defendant's suggestion, this court does not appear to have the authority to designate the "date" on which he was to begin his sentence, and the BOP is the entity with authority to determine when his sentence began and where he serves his service.

Pursuant to the doctrine of primary jurisdiction, service of a federal sentence generally commences when the United States takes primary jurisdiction and a prisoner is presented to serve his federal sentence, not when the United States merely takes physical custody of a prisoner who is subject to another sovereign's primary jurisdiction. *See United States v. Hayes*, 535 F.3d 907, 909–10 (8th Cir. 2008); *see also* 18 U.S.C. § 3585(a) ("A sentence to a term of imprisonment commences on the date the defendant is received in custody awaiting transportation to, or arrives voluntarily to commence service of sentence at, the official detention facility at which the sentence is to be served."); *Binford v. United States*, 436 F.3d 1252, 1255 (10th Cir. 2006) (sentence begins when received into custody for purpose of serving sentence, not when received into custody at an earlier time on a writ for the purpose of adjudicating federal claims).

The first sovereign to take physical custody of a defendant retains "primary jurisdiction" until releasing that jurisdiction. *See United States v. Col*e, 416 F.3d 894, 897 (8th Cir. 2005) ("As between the state and federal sovereigns, primary jurisdiction over a person is generally determined by which one first obtains custody of, or arrests, the person."); *Thomas v. Whalen*, 962 F.2d 358, 361 n.3 (4th Cir. 1992) ("A prisoner is not even in custody for purposes of section 3568 when he appears in federal court pursuant to a writ *ad prosequendum*; he is merely 'on loan' to federal authorities."). "Generally, a sovereign can only relinquish primary jurisdiction in one of four ways: 1) release on bail, 2) dismissal of charges, 3) parole, or 4) expiration of sentence." *Cole*, 416 F.3d at 897 (citing *United States v. Smith*, 812 F. Supp. 368, 371 (E.D.N.Y. 1993)). In this case, Tennessee apparently was the first sovereign to take physical custody of

Elledge. When the United States obtained physical custody of Elledge in January 2001 based upon a writ of habeas corpus *ad prosequendum*, the transfer of physical control over Elledge's custody from Tennessee to the United States did not terminate Tennessee' primary jurisdiction. *See Hayes*, 535 F.3d at 910 (federal sentence did not commence during or after the period of writ of habeas corpus *prosequendum*, but rather after service of state sentence). Thus, Elledge remained subject to Tennessee's primary jurisdiction and was merely "on loan" temporarily to the United States. *Id.*; *see also Jones v. Winn*, 13 F. App'x 419, 421 (7th Cir. 2001) ("Although Mr. Jones was "borrowed" by federal authorities for trial on his federal charges pursuant to a writ of habeas corpus *ad prosequendum*, he remained in the primary custody of Michigan authorities at all times until completion of his state sentence."); *Pease v. Cauley*, No. 08-CV-144-HRW, 2009 WL 1595734, at *3 (noting that a prisoner detained under such a writ remains in primary custody of the initial state "[u]ntil that sovereign state relinquishes jurisdiction over him" (citations omitted)). The "loan" ended when Elledge was returned to state custody after his sentencing in federal court.

As a result, his federal sentence did not automatically begin to run after the date on which he was sentenced. "There are two separate determinations to be made in computing a federal sentence. The BOP must decide (1) when the sentence commences and (2) to what extent the defendant in question may receive credit for any time already spent in custody." *Jimenez v. Warden, Fort Devens*, 147 F. Supp. 2d 24, 27 (D. Mass. 2001). Pursuant to 18 U.S.C. § 3585(a), a federal sentence "commences on the date the defendant is received in custody . . . to commence service [of sentence] at, the official detention facility at which the sentence is to be served." That is, a *federal* sentence is generally deemed to have commenced on the date a defendant is received into *federal* custody. *See United States v. Smith*, 812 F. Supp. 368, 370 (E.D.N.Y. 1993) ("A federal sentence does not commence until the Attorney General of the United States receives the defendant into his custody for service of that sentence." (citation omitted)). "When a federal court imposes a sentence on a defendant who is already in state custody, the federal sentence may commence if and when the Attorney General or the Bureau agrees to designate the state facility for the service of the federal sentence." *Id.* (citing *Barden v. Keohane*, 921 F.2d 476, 481–82 (3d Cir. 1990); 18 U.S.C. § 3621 (vesting designation authority in Bureau); 28 C.F.R. § 0.96 (delegating authority of Attorney General under repealed 18 U.S.C. § 4082 to Bureau)).

Generally speaking, pursuant to 18 U.S.C. § 3584(a), "[m]ultiple terms of imprisonment imposed at different times run consecutively unless the court orders that the terms are to run concurrently." Elledge's state and federal sentences were imposed at different times, and this court did not order the terms to run concurrently. Accordingly, based only upon the plain language of § 3584(a), it would appear that Elledge's federal sentence must run consecutively to his state sentence. However, at the time this court sentenced Elledge, district courts within the Sixth Circuit were not recognized to have the discretion to direct that the federal sentence be served concurrently with the yet-to-be-imposed state sentence on the pending state charges. *See United States v. Zorn*, 461 F. App'x 493, 496 (6th Cir. 2012) ("[A] federal court is powerless to order that its sentence run concurrently with a state sentence if the state court has not yet sentenced the defendant." (citing *United States v. Quintero*, 157 F.3d 1038, 1039–41, 1039 n.1 (6th Cir. 1998))), *vacated by Zorn v. United States*, 133 S. Ct. 149 (2012), *and remanded for reconsideration in light of Setser v. United States*, 566 U.S. ---- , 132 S. Ct. 1463 (2012). In *Setser*, the United States Supreme Court, resolving a circuit split, unambiguously held that the federal district courts have the authority to order that a federal sentence run consecutively to (or concurrently with) an anticipated state sentence.

Because the court did not have that authority at the time Elledge was sentenced, the record is silent as to the court's intent in that regard. Conversely, however, the state court did communicate its intent that the state sentences be served concurrently with the already imposed federal sentence. Notwithstanding, it is "well-settled that the state court's intent [regarding concurrent or consecutive sentences] is not binding [on the federal courts or the BOP]." *Fegans v. United States*, 506 F.3d 1101, 1104 (8th Cir. 2007); *see also Abdul-Malik v. Hawk-Sawyer*, 403 F.3d 72, 75 (2d Cir. 2005) (same); *Taylor v. Sawyer*, 284 F.3d 1143, 1150 (9th Cir. 2002) ("[C]oncurrent sentences imposed by state judges are nothing more than recommendations to federal officials." (citation omitted)). The non-binding nature of the state court's intentions may understandably be frustrating to criminal defendants because the "state court's action raises the defendant's expectations but does not resolve the issue." *Fegans*, 506 F.3d at 1104.

More to the point for purposes of the present motions, under 18 U.S.C. § 3621, the BOP—not the district court—is authorized to designate a facility (state, federal, or otherwise) as the place for service of

a federal sentence. Under this provision, the BOP must consider a range of factors, including "the nature and circumstances of the offense," "the history and characteristics of the prisoner," "any statement by the court that imposed the sentence" including any recommendation as to the type of correction facility, and "any pertinent policy statement" of the Sentencing Commission. 18 U.S.C. § 3621(b). On its face, § 3621(b) gives the BOP only the administrative responsibility to identify the facility in which a federal prisoner will serve out the sentence imposed by the district court. The BOP has interpreted this statute, however, as authorizing it to issue a *nunc pro tunc* order designating a state prison as the facility for service of a federal sentence "when it is consistent with the intent of the federal sentencing court or with the goals of the criminal justice system." BOP Program Statement 5160.05(9) (January 16, 2003) (available at http://www.bop.gov/DataSource/execute/dsPolicyLoc). Program Statement 5160.05(7)(c) explains, "[w]hen a federal judge orders or recommends a federal sentence run concurrently with a state sentence already imposed the Bureau implements such order or recommendation, ordinarily by designating the state facility as the place to serve the federal sentence." *See also Reynolds v. Thomas*, 603 F.3d 1144 (9th Cir. 2010) (reviewing appeal from the denial of § 2241 petition in which the petitioner contended that the BOP erred by refusing to issue an order under § 3621(b) for *nunc pro tunc* designation of Montana state prison as the place where the petitioner began serving his federal sentence).

The BOP Program Statement requires the BOP to consider the inmate's request, and sets forth the procedure the BOP must follow in determining whether to designate a state prison for (in effect) concurrent service of a federal sentence. Among other things, such procedures require the BOP to ask the federal sentencing court if it has any objections to such designation. *See Reynolds*, 603 F.3d at 1150. *See also Ysabel v. Sabol*, 645 F. Supp. 2d 37, 39 (D. Mass. 2009) (time served in state custody "may be credited *nunc pro tunc* (*i.e.*, may be deemed to have run concurrently against [the defendant's] federal sentence) if the BOP chooses to designate the state institution for service of that federal sentence.").

In sum, Elledge must first request the BOP to make a *nunc pro tunc* designation of the Tennessee state prisons (or county jails) as the place of confinement for his federal sentence. *Rogers v. United States*, 180 F.3d 349, 357 (1st Cir. 1999). *See Barden*, 921 F.2d at 483 (the BOP has authority to make this designation); *McCarthy v. Doe*, 146 F.3d 118, 119 (2d Cir. 1998) (the BOP may make such a retroactive designation where the federal sentencing court is silent as to whether a federal sentence

should run concurrently with "a not-yet-imposed state sentence"). The BOP must consider any such a request. *See Barden*, 921 F.2d at 478. Once his administrative remedies are exhausted, *see* 28 C.F.R. §§ 542.10–542.16, and assuming his request is denied, Elledge may choose to seek judicial review of the BOP's decision by filing a habeas petition under 28 U.S.C. § 2241. *Rogers*, 180 F.3d at 357 (citing *United States v. Pineyro*, 112 F.3d 43, 45–46 (2d Cir. 1997) (prisoner must exhaust administrative remedies before seeking review of designation of facility); *Barden*, 921 F.2d at 478–79 (petition under § 2241 is proper mode of challenging BOP's refusal to consider designating state prison as place of confinement); *United States v. Jalili*, 925 F.2d 889, 893 (6th Cir. 1991) (challenge to designation of facility properly cognizable under § 2241).

### III.  CONCLUSION

For the reasons set forth herein, Elledge's motion for clarification (ECF No. 46) is **GRANTED IN PART**, insofar as the court affirms on the record that it has no opposition to Elledge's serving his federal sentence concurrently with his state sentences, particularly in light of the fact that it apparently was not Elledge's fault that no federal detainer was placed against him prior to his release from state custody, or that he remained free (though readily findable) for several years before being taken into custody again to serve his federal sentence. This judge did not conduct the original sentencing and cannot confirm one way or the other whether the court would have ordered the federal sentence to be served concurrently with the state sentences if the court had been aware that it had the authority to order concurrent service. However, the BOP is recommended to take notice of the state court's order in conducting its calculation of sentence credits in this case.

The motion for *nunc pro tunc* designation (ECF No. 49) is **DENIED** without prejudice based on Elledge's failure to exhaust his administrative remedies.

It is so **ORDERED**.

Aleta A. Trauger
United States District Judge